IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| RUST-OLEUM CORPORATION, | Case No. 1:18-cv-01655-CL |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NIC INDUSTRIES, INC., | |
| Defendant. | |

CLARKE, Magistrate Judge.

This case comes before the Court on Defendant's Motion to Seal Portions of the Pleadings (#44). For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Prior to the parties entering the Stipulated Protective Order, Defendant NIC Industries, Inc. ("NIC") served a third-party supplier[1] with a subpoena requesting documents. Plaintiff

---

[1] The Court has not named the third-party supplier in this Order to avoid unnecessary disclosure in the interest of NIC's request for confidentiality.

Page 1 of 7 – OPINION AND ORDER

Rust-Oleum filed a Motion to Quash and attached three exhibits: (1) NIC's subpoena; (2) NIC's preliminary set of responses to Rust-Oleum's first set of discovery requests; and (3) a Mutual Confidentiality Agreement between Rust-Oleum and the third-party supplier.

Subsequently, NIC filed a motion to seal the entire case, which the Court denied on February 21, 2019, because NIC had not provided compelling reasons supported by specific factual findings to justify sealing the entire case and had not explained why compliance with the protective order was insufficient to protect its confidential information.

Now, NIC moves this Court for entry of an order placing the following portions of the pleadings filed before entry of the protective order under seal: Exhibit A (#1-1), Exhibit B (#1-2), and Exhibit C (#1-3) attached to the Complaint; NIC's Answer (#12); and Rust-Oleum's Motion to Quash NIC's Subpoena to the third-party supplier (#25). Plaintiff Rust-Oleum does not agree that any of these documents need to be placed under seal, but formally objects to sealing only its Motion to Quash NIC's Subpoena (#25).

## DISCUSSION

Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). This right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Id.* at 598. Such vigilance is aided by the efforts of newspapers to "publish information concerning the operation of government." *Id.* Unless a particular court record is one "traditionally kept secret,"[2] a "strong presumption in favor

---

[2] Ninth Circuit case law has identified two types of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir.1989). Neither applies in this case.

of access" is the starting point. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)). A party seeking to seal a judicial record bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. *Id.*

Under the "compelling reasons" standard, the party must "articulate[ ] compelling reasons supported by specific factual findings," *id.* (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102–03 (9th Cir.1999)), that outweigh the general history of access and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'" *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co.*, 900 F.2d 168, 170 (9th Cir.1990)). In turn, the court must "conscientiously balance[ ] the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz*, 331 F.3d at 1135. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Foltz*, 331 F.3d at 1136. Additionally, the Ninth Circuit has held that reliance on a blanket protective order is not a "compelling reason" that rebuts the presumption of access. *Id.* at 1138; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir.1992) (noting that "[t]he extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery" and that reliance on a "stipulated . . . blanket protective order" does not justify sealing court records).

Finally, the Court treats judicial records attached to dispositive motions differently from records attached to non-dispositive discovery motions. *Kamakana*, 447 F.3d at 1180. Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that "compelling reasons" support secrecy. *Id.* (citing *Foltz.* 331 F.3d at

1136). A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive discovery matters. *Id.* Under Local Rule of Civil Procedure 26-4, the "good cause" standard for non-dispositive discovery matters requires the moving party to show with respect to each particular material or category of materials that specific prejudice or harm will result if no order is granted. Further, the showing must articulate why, as an alternative to filing under seal, the information sought to be protected could not be redacted. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the requirements of this rule. LR 26-4 (*See* Fed. R. Civ. P. 26(c)). The Court has broad discretion to consider all of the competing interests, including the presumption of public access and whether or not a party has made a particularized showing of harm or specific prejudice that will result from unsealing such records. *Kamakana*, 447 F.3d at 1187 (affirming the district court's order to unseal documents attached to non-dispositive motions).

In this case, the judicial documents that NIC seeks to have sealed are not dispositive. However, amongst the documents that NIC seeks to seal is its own Answer to Plaintiff's Complaint, which contains the trade secret counterclaim that has become the heart of the dispute in this case. Therefore, while NIC need not show a "compelling reason" to seal the documents at issue, the Court will consider the strong presumption in favor of public access when it evaluates whether NIC has shown "good cause" under LR 26-4.

i. **Exhibits A, B, & C Attached to Plaintiff's Complaint**

NIC moves for an order sealing Exhibit A (#1-1), Exhibit B (#1-2), and Exhibit C (#1-3) attached to Rust-Oleum's Complaint because the exhibits "disclose the identity of the products NIC sold to Rust-Oleum as well as confidential price information, the identity of the parties and their business relationship." NIC's Memo in Support of Motion at 2 (#47). The parties agreed to

keep this information confidential by written contract. After review of these documents, the Court finds that NIC showed good cause to have these exhibits sealed.

### ii. NIC's Answer

NIC moves to have its Answer sealed because "when coupled with Rust-Oleum's Motion to Quash the Subpoena [the Answer] provides interested third parties (potential competitors) with information on how to reverse engineer a bottle of Wipe New off the shelf and where to purchase the active ingredient, all of which were secret before this case was filed." NIC's Memo at 3 (#47). NIC made this same argument in its prior motion to seal the entire case. *See* Defendant's Motion to Seal Case at 3 (#29). NIC has provided no additional reasoning for why the Answer should be sealed.

NIC's motion to seal its Answer is denied for the same reasons it was denied the first time. The Court thoroughly reviewed the Answer for the second time and was again unable to find the identity of the secret ingredient, the identity of the supplier of that ingredient, or instructions on how to reverse engineer the product. Defendant does not claim that the Answer discloses its active secret ingredient and fails to explain with any particularity where in the Answer there are instructions on how to reverse engineer its product. Therefore, considering the strong presumption in favor of public access, especially for pleadings such as the Complaint and Answer that speak to the heart of the case, NIC's broad allegations of harm do not satisfy the "good cause" requirements of Rule 26-4.

### iii. Plaintiff's Motion to Quash NIC's Subpoena

Finally, NIC moves to seal Rust-Oleum's Motion to Quash NIC's Subpoena (#25) to the third-party supplier. NIC claims that it anticipated signing a protective order with the third-party supplier to keep the supplier's identity confidential, and that by filing the motion to quash and

attaching exhibits to the motion, Rust-Oleum "disclose[d] information about the alleged secret formula in violation of Sections 13.1 and 13.2 of the [Sales] Contract and could harm defendant's competitive advantage in the market." NIC's Memo at 3 (#47). Specifically, NIC argues that Exhibit C to the motion must be sealed, at a minimum, because it is a confidential agreement between NIC and the supplier and contains the generic name of the alleged secret ingredient at issue in NIC's trade secret counterclaim. However, NIC is incorrect about the identity of Exhibit C. NIC is not a party to the agreement marked as Exhibit C, as it is actually an agreement between Rust-Oleum and the supplier. Furthermore, Rust-Oleum argues that the chemical named in the agreement is not the generic name for the alleged secret ingredient, but actually a family of chemicals and the alleged secret ingredient is just one chemical within the family.

Regardless of the actual name of the secret ingredient or what family of chemicals it allegedly belongs to, the only information that can be gleaned from Rust-Oleum's Motion to Quash is that Rust-Oleum and the supplier have a commercial relationship regarding a chemical and NIC sent a subpoena to discover information about that relationship. NIC indicated that it learned about Rust-Oleum and the suppliers' relationship through publicly available shipping documents. Additionally, the supplier publicly promotes the sale of its chemical product on its website. The motion and its exhibits do not seem to identify anything that is confidential to NIC. Furthermore, NIC has not shown that it even has standing to conceal the existence of a relationship and the details of a relationship that it is not a party to. Given that the supplier does not keep the fact that it supplies this chemical confidential, and neither the supplier nor Rust-Oleum claim their agreement is subject to sealing, NIC cannot argue that the use of a generic name of a chemical or family of chemicals in a contract that it is not a party to somehow violates

"the Contract [between NIC and Rust-Oleum], trade secret law, and now the Stipulated Protective Order." Therefore, NIC did not satisfy the "good cause" requirements of Rule 26-4.

## ORDER

Based on the foregoing, Defendant's Motion to Seal (#44) is GRANTED in part and DENIED in part. The Clerk is directed to seal Exhibit A (#1-1), Exhibit B (#1-2), and Exhibit C (#1-3) attached to the Complaint.

IT IS SO ORDERED.

DATED this 2C day of June, 2019.

MARK D. CLARKE
United States Magistrate Judge