IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**RUST-OLEUM CORPORATION,**

Plaintiff / Counter Defendant,

v.

**NIC INDUSTRIES, INC.,**

Defendant / Counter Claimant.

Case No. 1:18-cv-01655-CL

**OPINION AND ORDER**

**CLARKE**, Magistrate Judge.

Before the Court for consideration is NIC's motion for attorney fees (#401). For the reasons below, NIC's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The facts of this case have been thoroughly detailed in prior Opinion and Orders of this Court and are well known to the parties. NIC has prevailed on all of the claims and the counterclaims in this case. NIC was granted summary judgment on the claims initially brought by Rust-Oleum, and, after a two-week trial that began on September 27, 2024, a jury found that Rust-Oleum breached its contract with NIC, willfully and maliciously misappropriated NIC's trade secret, and committed fraud. The jury verdict awarded NIC nearly all of the damages that

Page 1 – Opinion and Order

NIC requested and proved with expert testimony, and it awarded punitive damages as to the misappropriation and fraud claims. NIC accepted a remittitur as to the damages awarded for fraud, and the Court entered Judgment against Rust-Oleum in the amount of $40 million for the breach of contract claim, $20 million for the trade secret misappropriation, plus $40 million in punitive damages for willful and malicious conduct, and $3,610,814.00 for the fraud claim, plus $7,221,628.00 in punitive damages for willful and malicious conduct. The Court also awarded prejudgment interest as to the compensatory damages, and it determined that NIC was entitled to attorney fees and costs.

## DISCUSSION

NIC moves for an award of its attorneys' fees. While NIC is entitled to attorney fees and costs in this case, and the NIC attorneys did secure an exceptional and outstanding outcome, a multiplier of 2.0 is not appropriate. Therefore, this motion is granted, but the total sum of fees is reduced, as described below.

**I.     NIC is entitled to attorneys' fees and costs in a lodestar amount of $1,768,083.00, plus an upwards adjustment of 30%.**

NIC moves for an award of attorneys' fees in a lodestar amount of $1,768,083.00, and an upward adjustment, or a "multiplier," of 2.0, for a total amount of $3,536,166.00. For the reasons below, the Court grants the requested lodestar amount but awards an upwards adjustment of only 30%.

**a. Legal basis for awarding fees and costs.**

NIC is entitled to their attorneys' fees under the Oregon Trade Secrets Act, ORS § 646.467. Under ORS § 646.467, a court "may award reasonable attorney fees to the prevailing party if ... [w]illful or malicious misappropriation is found by the court." In determining the propriety of such an award, a court must weigh the factors set forth in ORS § 20.075. *See* ORS §

20.075 ("A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees ...."); *see also Precision Automation, Inc. v. Tech. Servs., Inc.*, No. CIV. 07–707–AC, 2010 WL 1051009, at *1 (D. Or. Feb. 16, 2010) (considering the factors contained in ORS § 20.075).

NIC satisfies the facial requirements of ORS § 646.467. In particular, the evidence at trial fully supported the jury verdict, which clearly determined that Rust-Oleum's misappropriation was willful and malicious. The Court credits such findings.

The factors outlined in ORS § 20.075 also support an award of attorneys' fees. The first factor, whether Rust-Oleum's conduct was "willful or malicious," ORS § 20.075(1)(a), is already established. The second, third, fourth, and fifth factors all speak to the reasonableness of a party's litigation conduct and the impact of an award on future litigants. *See* ORS § 20.075(1)(b) (reasonableness of defenses); § 20.075(1)(c) (the extent to which award would deter others from asserting good faith defenses); § 20.075(1)(d) (the extent to which an award would deter others from asserting meritless defenses); § 20.075(1)(e) (the objective reasonableness of the parties and the diligence of the parties and the attorneys during the proceedings).

Rust-Oleum's conduct in this case was quite aggressive. Rust-Oleum initiated the suit against NIC, forcing NIC to defend against the claims in addition to filing its own counterclaims. As the litigation proceeded, Rust-Oleum forced NIC to litigate what should have been routine discovery issues and caused numerous delays with motions of their own. The case has been ongoing for nearly 7 years and more than 400 docket entries.

The sixth factor, the "objective reasonableness of the parties in pursuing settlement," is generally neutral, as the Court does not know the full extent of the parties' settlement efforts. The

manner in which Rust-Oleum has aggressively litigated this case, however, creates the implication that this factor should weigh in favor of NIC. This inference is supported by NIC's statement in its motion for fees that, "The Friday before trial, RO made its first and only monetary settlement offer" (ECF #401 p.7). Rust-Oleum disputes this statement as untrue, but merely states that it made a prior offer, not that it offered any significant monetary settlement. Regardless, this factor is either neutral, or it weighs in favor of NIC.

Taken together, the standard contained in ORS § 646.467 and the factors outlined in ORS § 20.075 both support an award of attorneys' fees in this case.

### b. The scope of the fee recovery includes all claims and counterclaims except the counterclaim for fraud.

NIC requests its attorneys' fees for almost the entire litigation, including Rust-Oleum's initial claims, which NIC prevailed upon at summary judgment, as well as NIC's counterclaims of breach of contract and misappropriation, which NIC prevailed upon at trial. NIC does not seek fees as to NIC's third counterclaim for fraud.

The right to attorneys' fees for the breach of contract counterclaim is contained in the Exclusive Sales Agreement (Ex. 239, ¶ 22) and the Settlement Agreement (Ex. 326, ¶ 6). Even without these two agreements, however, NIC would be entitled to attorney fees for the entire litigation, based on ORS 646.467. *See OmniGen Rsch., LLC v. Yongqiang Wang,* No. 6:16-CV-268-MC, 2017 WL 5505041, at *28 (D. Or. Nov. 16, 2017) (The Court's award of attorneys' fees pursuant to the Oregon Trade Secrets Act "applies to the entire action and not just the individual claims under which the fees are authorized."). In an action "where the [prevailing party] presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown v. City of Fontana,* 565 F.3d 1097, 1103 (9th Cir. 2009) (quoting

Page 4 – Opinion and Order

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Instead, the fee awards in such cases "[n]ormally ... will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. *See also OmniGen Rsch., LLC,* No. 6:16-CV-268-MC, 2017 WL 5505041, at *28.

Here, the breach of contract and the misappropriation counterclaims are clearly intertwined, and attempting to apportion time spent on just one and not the other would be futile. These two counterclaims are also related to the original claims brought by Rust-Oleum, on which NIC prevailed at summary judgment. The fraud claim, a minor and later-added claim, is generally separate, and NIC does not argue that the time spent on that claim is compensable.

## II.   Reasonableness of the requested attorneys' fees

Having determined that NIC is entitled to its attorneys' fees for the entire matter except the fraud claim, the Court turns to whether the fees requested are reasonable.

### a. Legal standards

Generally, in awarding a reasonable attorney fee, courts apply the lodestar method to determine the reasonable hourly rate and then multiply that rate by the number of hours the attorney reasonably spent on the case. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

A reasonable billing rate is determined based on the "prevailing market rate" in the relevant community. *Camachco v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "The burden is on the [fee applicant] to produce evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 (1984).

Courts review the billing hours submitted to determine whether the prevailing attorney could have reasonably billed the claimed hours to a private client. *Gonzalez*, 729 F.3d at 1202. Hours that could not reasonably be billed to a private client are not recoverable. *Id.* at 1203. "[E]xcessive, redundant, or otherwise unnecessary" hours are also not recoverable. *Id.* (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)). Non-clerical work performed by paralegals and law clerks is recoverable as attorneys' fees. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1247–49 (D. Or. 2013).

Under the Oregon Trade Secrets Act, "the court shall consider the following factors in determining the amount" of an award of attorneys' fees:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
> (c) The fee customarily charged in the locality for similar legal services.
> (d) The amount involved in the controversy and the results obtained.
> (e) The time limitations imposed by the client or the circumstances of the case.
> (f) The nature and length of the attorney's professional relationship with the client.
> (g) The experience, reputation and ability of the attorney performing the services.
> (h) Whether the fee of the attorney is fixed or contingent.
> (i) Whether the attorney performed the services on a pro bono basis, or the award of attorney fees otherwise promotes access to justice.

Oregon law further directs that when analyzing these factors, a court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 190-91 (1998). The court, however, "has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255 (2012).

Under ORS 20.075(2), factor (a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors (c) and (g) generally relate to the reasonableness of the hourly rates charged. *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-CV-87-SI, 2018 WL 3873575, at *2 (D. Or. Aug. 15, 2018). Taken together, these factors are comparable to the "lodestar" method discussed above. *See id.* (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) and discussing other relevant case law). Factor (d) generally informs whether an upward or downward adjustment might be appropriate. *Id.*

### b. Reasonableness of the rates requested.

As discussed above, under ORS 20.075(2), factor (g) (the experience, reputation and ability of the attorney performing the services) informs the Court's assessment of the reasonableness of the rate requested.

Here, Attorney David Paradis provides the following information about his experience, reputation, and ability to practice law:

> I graduated cum laude from Willamette University School of Law in 1985. I was initially employed at the law firm of McEwen Gisvold Rankin and Stewart in Portland where I began a career in complex commercial litigation and attorney malpractice defense. In 1992, I moved to Medford and began working at Brophy Schmor and became a partner in 1993. I am admitted to practice in the State of Oregon, the United States District Court of Oregon, The Ninth Circuit Court of Appeals, and the United States Supreme Court. I have handled at least 30 jury trial cases to verdict in federal and state court and have handled at least another 50 bench trials to conclusion in state and federal court. I have served on the following Oregon State Bar Committees: Practice and Procedure, Federal Practice, the Local Rules Committee for the District Court of Oregon, the Ninth Circuit Judicial Conference Committee, and the Oregon Council on Court Procedures. I have had a Martindale Hubbell rating of AV Preeminent for many years.

The following information is provided about Attorney Mark Weaver's experience, reputation, and ability to practice law:

Page 7 – Opinion and Order

> Mark Weaver graduated cum laude from Willamette University College of Law in 1996. He was employed as an associate at Brophy Schmor in 1996 and became a partner in 2001. Mr. Weaver is admitted to practice in the State of Oregon, the United States District Court of Oregon, and the Ninth Circuit Court of Appeals. Mr. Weaver has extensive experience in insurance defense and commercial litigation. He has assisted [Mr. Paradis] in trials for over 25 years and handled his own trials for over 20 years. His work in this case initially involved legal research of issues raised and briefing the various motions filed in this case. As trial approached, Mr. Weaver became more involved. He was assigned to question some of the witnesses and assigned to handle specific pretrial and trial issues, like jury instructions, motions in limine, the Gypsy Bar incident and other issues before and during the trial.

The Court uses the most recent Oregon State Bar (OSB) Economic Survey ("Survey") as an initial benchmark for determining the reasonableness of a party's requested rates. *Precision Seed Cleaners,* 976 F. Supp. 2d at 1244 (*citing Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003)). The most recent Survey was published in 2022.[1] The Survey provides data on the hourly rates charged by attorneys in each locality within Oregon, broken down by years of experience, and separately broken down by area of specialty. Here, based on the information above, Attorney Dave Paradis had over 30 years of experience from the beginning of this litigation in 2018. Attorney Mark Weaver had over 20 years of experience.

According to the OSB Survey, attorneys with over 30 years of experience in Southern Oregon had a median hourly rate of $313. No information was available at the 95th percentile for attorneys with over 30 years of experience in Southern Oregon. Attorneys with over 30 years of experience in Oregon statewide charged a median rate of $350 and a 95th percentile rate of $722. Attorneys with 21-30 years of experience in Southern Oregon charged a median rate of $300, a mean rate of $312, and no information was available for a 95th percentile rate.

---

[1] Available at https://www.osbar.org/surveys_research#economicsurveys.

Page 8 – Opinion and Order

As to the specific area of practice, for attorneys with a specialty in "Business / Corporate Litigation," no data was available for attorneys in Southern Oregon. For attorneys with a specialty in "Business / Corporate Litigation," in Oregon statewide, the median rate charged was $350 and the 95th percentile rate was $730.

These Survey rates are not compulsory. *See OmniGen Rsch.*, No. 6:16-CV-268-MC, 2017 WL 5505041, at *29. In *OmniGen*, the court agreed with the plaintiffs that the Survey was not the appropriate benchmark, noting "[m]ost importantly," that "the Survey offers no data on the rates charged by attorneys specializing in intellectual property law and there is no data on the most analogous specialty, labeled Business/Corporate—Litigation, in the region where this Court sits." *Id.* Here we have a similar case. The 2022 OSB Survey offers no data on the rates charged by attorneys specializing in Business / Corporate Litigation in the specific region where this Court sits – Southern Oregon. Therefore, the Court is inclined to consider the rates used more broadly statewide in Oregon, especially because the District Court of Oregon encompasses the entire state of Oregon and not just the Southern Oregon divisional region. Oregon state courts have also looked to statewide hourly rates for cases requiring specialized business litigators not readily available in the locality. *See Hanna, Ltd. Partnership v. Windmill Inns of America, Inc.*, 223 Or. App. 151, 166, 194 P.3d 874 (2008) (upholding fee award larger than what is "customarily charged" in Southern Oregon). By this standard, a rate between $350 and $730 for both attorneys would be reasonable, based on the Survey results above.

Additionally, NIC has offered an expert report on the issue of the appropriate rate for the attorneys in this case considering their specialty, the complexity of the case, the contentiousness of the litigation, and the years of experience for each attorney. The Court has reviewed the expert report, offered by attorney Robert Bonaparte, and finds Mr. Bonaparte to be well-qualified

to offer such an opinion. Moreover, the report is well-supported and uses credible methodology. According to the report, $625 is a reasonable rate for Attorney Paradis and $550 is a reasonable rate for Attorney Weaver. These amounts fall in between the median $350 rate and 95th percentile $730 rate for attorneys with a specialty in "Business / Corporate Litigation," in Oregon statewide. The Court agrees that these rates are reasonable, considering the years of experience and specialty of the attorneys in this case.

Rust-Oleum's arguments to the contrary are unavailing. First, Rust-Oleum asserts that the NIC attorneys should only be able to request the rates they actually charged to their client throughout the litigation. Attorneys Paradis and Weaver submit declarations to establish that the rates they actually charged to NIC were below-market "because they did not believe NIC could afford to pay higher rates and prosecute their counterclaims through trial." The Court finds no reason to dispute this claim, and it is logical and reasonable considering the longstanding relationship between NIC and NIC's counsel, the length of this litigation, and Rust-Oleum's aggressive conduct in this case.

Second, Rust-Oleum argues that NIC has not shown the "extraordinary circumstances" to be able to charge a current rate for work done many years prior. *See Gessele v. Jack in the Box, Inc.*, No. 3:14-cv-01092-HZ, 2024 U.S. Dist. LEXIS 67942, *36-39 (D. Or. Apr. 14, 2024). The Court disagrees. Rust-Oleum was able to hire many excellent attorneys to prosecute this case to the fullest extent, creating significant work for the two NIC attorneys from a small firm, and creating a delay of six years of litigation before relief could be granted. The Court finds that extraordinary circumstances and special hardships apply.

Third, while one of Rust-Oleum's attorney fee experts, Jim Dole, opines that the requested rates are excessive, Rust-Oleum's second expert, Daniel Skerritt relies on the 2024

Morones Survey. As Mr. Skerritt discusses, the Morones Survey has been cited with approval by judges in decisions regarding fee petitions in Oregon cases involving complex commercial litigation. The 2024 Morones Survey shows that, for attorneys with 30+ years of practice in this specialty, the average rate was $723 and the median rate was $713 in 2024. In 2022 the average rate was $674 and the median rate was $775, and in 2018 the average rate was $623 and the median rate was $620. Relying on these numbers, the rates requested are perfectly comparable and applicable to all years of the litigation, including back to 2018.

Finally, the Court finds Rust-Oleum's objections to the rates requested by NIC to be disingenuous, considering that Rust-Oleum retained a large number of high-caliber attorneys from some of the largest legal markets around the country to litigate this case. NIC's attorneys' work has been commensurate to opposing counsels' work, and the rates requested are reasonable for the quality of work completed.

### c. The reasonableness of the hours billed

Courts review the billing hours submitted to determine whether the prevailing attorney could have reasonably billed the claimed hours to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Hours that could not reasonably be billed to a private client are not recoverable. *Id.* at 1203. "[E]xcessive, redundant, or otherwise unnecessary" hours are also not recoverable. *Id.* (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)). Non-clerical work performed by paralegals and law clerks, however, is recoverable as attorneys' fees. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1247–49 (D. Or. 2013); *OmniGen Rsch.*, No. 6:16-CV-268-MC, 2017 WL 5505041, at *29.

The Court has reviewed the billing hours submitted by NIC in this case as well as the objections filed by Rust-Oleum. Rust-Oleum asserts that the time entries are "littered with vague

descriptions like 'review discovery issues,' 'prepare set for expert,' and 'draft memo re: same.' Ex. 4 at 8, 11, 34." The Court has reviewed the entries identified and does not find them to be vague, nor are they excessive, redundant, or otherwise unnecessary.

Rust-Oleum also asserts that entries for work done by paralegals and legal assistants are disallowed. The Court disagrees. Smaller law firms often rely on paralegals and legal assistants more heavily than larger firms with more resources and more attorneys available to complete such tasks. Moreover, the total amount charged for the paralegal entries that are challenged by Rust-Oleum is $1,639.00, which is equal to 0.09% of the total lodestar amount requested, a *de minimus* amount in the context of this sprawling litigation. Certainly, it is not an amount that justifies a 10% "haircut" of the total hours billed.

Rust-Oleum also objects to the billing of travel time. "Reasonable attorneys' fees include reasonable travel time compensated at the full hourly rate." *United States v. City & Cnty. of San Francisco*, 748 F. Supp. 1416, 1422 (N.D. Cal. 1990), *aff'd in part, remanded in part sub nom. Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993). *See also Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 396 (8th Cir.1987) (travel to and from depositions compensable). Here, the attorney billed $2,360 for travel to Santa Fe, New Mexico, for mediation. This is reasonable travel time, and it is compensable.

The Court finds that all of the entries identified by Rust-Oleum are hours that could reasonably be billed to a private client. None of the hours billed by the NIC attorneys are excessive, redundant, or unnecessary. The Court therefore declines to reduce the hours billed.

    **d. Remaining arguments about the lodestar**

Rust-Oleum argues that NIC fails to apportion its fees between the claims that are entitled to fees (misappropriation and breach) and the claim that is not (fraud). Rust-Oleum claims that the fee request should be reduced by 1/3 because fraud was one of three counterclaims that NIC prevailed upon at trial. But NIC also prevailed on all of Rust-Oleum's four claims at summary judgment, making the fraud claim just one of seven total litigated claims. Moreover, the fraud claim was a minor, later-added claim, which did not require equivalent work time throughout the life of the case. The parties spent much less time briefing it at summary judgment and offering testimony and evidence for it at trial.

As stated above, NIC is entitled to fees as to the entire litigation. However, to the extent that attorney fees as to the fraud claim are not recoverable, NIC voluntarily discounted its requested fees by 5%, or $100,000. The Court finds this is a sufficient discount, considering the time spent on it, and considering that the compensatory damages awarded to the fraud claim represent about 5% of the total compensatory damages awarded in the case. For this reason, and all of the reasons above, the lodestar requested by NIC, of $1,768,083.00, is reasonable, and this portion of NIC's motion is GRANTED.

### e. Upward or downward adjustment, or "fee multiplier"

"A court abuses its discretion when it fails to consider the relevant factors for awarding an enhancement multiplier." *Terry v. City of San Diego*, 583 F. App'x 786, 791 (9th Cir. 2014) (internal citations omitted). Under Oregon's statutory attorney fee provision, "a fee multiplier may be justified when the attorney's payment is based on a contingency-fee arrangement or there is otherwise a delay in getting paid." *Moro v. State*, 360 Or. 467, 492, 384 P.3d 504, 519 (2016). Additionally, "Oregon law permits an enhancement of fees when it is supported by the facts and circumstances of the case." *VanValkenburg v. Oregon Dep't of Corr.*, No. 3:14-CV-00916-MO,

2017 WL 2495496, at *5 (D. Or. June 9, 2017) (citing *Beck v. Metro. Prop. and Cas. Ins. Co.*, 3:13-cv-00879-AC, 2016 WL 4978411, at *22 (D. Or. Sept. 16, 2016)). "Typically, enhanced fee awards are appropriate in cases where the recovery was an 'exceptional success,' even if plaintiffs did not prevail on all claims, and other favorable factors exist, including 'the difficulty and complexity of the issues involved in the case, the value of the interests at stake, as well as the skill and professional standing of lawyers involved.'" *VanValkenburg*, 2017 WL 2495496, at *6 (citing *Strunk v. Pub. Emps. Ret. Bd.*, 169 P.3d 1242, 1254 (Or. 2007)). As noted by the Oregon Supreme Court in *Moro*, greater weight should be given to the risk factor of nonpayment for contingencies than other factors when those other factors were already considered in establishing a higher hourly rate for the lodestar award. 360 Or at 491-2 (2016).

Here, the Court does not find that there was a high risk of nonpayment, as there would have been if this were a contingency-fee case. Additionally, the Court already considered the difficulty and complexity of the case, the contentiousness of the litigation, as well as the skill and professional standing of lawyers involved, in determining the rate of the lodestar award. The Court will not duplicate consideration of these factors in determining an upward adjustment. However, the Court did not yet consider the extraordinary success or the value of the interests at stake in the litigation.

The success achieved by the NIC's attorneys in this case is undoubtably extraordinary. NIC prevailed, not only on the claims brought by Rust-Oleum, but on their own counterclaims at trial, securing all of the damages sought, as well as the full extent of punitive damages available. The verdict contained what is likely one of the highest damage awards in the history of the state of Oregon. For this reason, the Court approves an upward adjustment of thirty percent (30%). Thirty percent of $1,768,083.00 is $530,424.90, combining for a total award of $2,298,507.90.

Page 14 – Opinion and Order

**III.  NIC is entitled to its non-taxed expenses of $38,388.00.**

NIC provides a detailed list of its non-taxed expenses in this case as Exhibit 3 to its Motion for Fees (ECF #401-3). Rust-Oleum does not object to any entry or expense. The Court has reviewed the list and finds the entries to be reasonable. Therefore, NIC is granted non-taxed expenses in the amount of $38,388.00.

### ORDER

NIC's motion for attorney fees is GRANTED in PART and DENIED in PART. The total award of attorney fees is $2,298,507.90. NIC is also awarded its non-taxed expenses in the amount of $38,288.00.

It is so ORDERED and DATED this  15  day of July, 2025.

MARK D. CLARKE
United States Magistrate Judge